WALTER G. PIETSCH, EXECUTOR, ESTATE OF AMY LAKE PIETSCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5424. Promulgated March 22, 1927.

GROSS ESTATE.—Inclusion of properties acquired from a prior estate and taxed within five years.

*Roger L. Foote, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the respondent.

The petitioner in this proceeding complains of the Commissioner's letter dated May 25, 1925, asserting a deficiency in the amount of $2,170.54, in estate taxes levied under the Revenue Act of 1921, against the estate of Amy Lake Pietsch, deceased.

The petitioner alleges that the Commissioner erred in including in the gross estate the value of certain securities acquired by the de-

cedent through the investment of the proceeds of sales of certain securities acquired by the decedent as a share in the estate of her father, who died within five years prior to the death of the decedent and on whose estate the estate taxes were paid.

The Commissioner in his original and amended answer filed at the hearing of this proceeding avers that in his determination he allowed as a deduction, under section 403 (a) (2) of the Revenue Act of 1921, the sum of $47,447, representing investments in securities made by Amy Lake Pietsch, deceased, out of $48,000 cash received by her from the estate of her deceased father, R. C. Lake, but that in so doing he erred for the reason that, in fact, the $47,447 did not represent investments in securties made out of cash received from the prior estate; and he further avers that the amount of estate tax in controversy is in excess of the sum of $2,170.54, shown in the deficiency letter dated May 25, 1925, and amounts to $4,068.42.

#### FINDINGS OF FACT.

1. The petitioner is the executor of the last will of Amy Lake Pietsch, deceased, is a resident of Cook County, Ill., and was duly appointed such executor by the Probate Court of Cook County, November 1, 1923.

2. Amy Lake Pietsch, the decedent, died September 17, 1923. She was a daughter and one of the legatees under the last will of R. C. Lake, who died July 10, 1919, and on whose estate an estate tax was paid.

3. In the distribution of the assets of the estate of R. C. Lake, the decedent received as her share, among other properties, the following securities on the following dates:

> 57 Shares, Continental & Commercial National Bank, in November, 1919.
> 250 Shares, Goodrich Company preferred, in November, 1919.
> 800 Shares, Goodrich Company common, in February, 1920.

4. The decedent sold, through John Burnham & Co., brokers, of the securities received by her as set forth in paragraph three above, 57 shares of Continental & Commercial National Bank, as follows:

| | |
|---|---:|
| January 20, 1920, 5 shares at 318 | $1,590 |
| January 20, 1920, 50 shares at 319 | 15,950 |
| January 29, 1920, 1 share at | 319 |
| January 31, 1920, 1 share at | 321 |
| Total | 18,180 |

This amount was left with the said brokers for the purchase of other securities, and on January 30, 1920, the decedent purchased 30 shares of Eastman Kodak for the sum of $18,180. The commissions on, and the cost of the sales, in the amount of $58.14, were

paid by the decedent by check on February 5, 1920, and the account with the said brokers was closed. At the time of her decease, Amy Lake Pietsch owned Eastman Kodak stock of the total value of $61,425, of which the $18,180 above described was a part.

5. Prior to her decease, Amy Lake Pietsch had acquired from sources other than the estate of her father not less than 530 shares of Goodrich preferred, and not less than 87 shares of Goodrich common stock. On or about March 17, 1921, she placed in the hands of Noyes & Jackson, stock brokers, 780 shares of Goodrich preferred and 887 shares of Goodrich common stock. On March 18 and 21, 500 shares of Goodrich preferred, and 800 shares of Goodrich common stock were sold by the brokers for $69,112.99. On March 21 to 24, inclusive, the brokers purchased for her account 200 shares of Allis Chalmers preferred, and 200 shares of Corn Products, and on March 31 and April 1 the same brokers purchased 200 more shares of Allis Chalmers preferred, and 200 more shares of Corn Products; the total cost of stock so purchased, including commissions and other charges, aggregated $69,112.91. All of the shares of stock so purchased by these brokers were delivered to the said Amy Lake Pietsch on or before April 7, 1921. The 400 shares of Allis Chalmers preferred thus acquired were a part of the securities owned by the said Amy Lake Pietsch at the time of her death.

6. From March 17, 1921, until July 22, 1923, the decedent's account with Noyes & Jackson, brokers, was kept open and the said brokers' statement to the decedent shows the purchase and sale of numerous securities and the final balance figures of $214,188.65.

7. The decedent had received gifts from her father during his lifetime, and at the time of his death possessed an individual estate consisting mostly of securities and a bank account. It had always been her practice to keep her capital invested, and upon the sale or maturity of any securities the money received was deposited to her bank account and later reinvested, except as to the transactions made through John Burnham & Co., and Noyes & Jackson, brokers. In the transactions made through Noyes & Jackson, many securities were bought by the brokers, delivered to the decedent and later redelivered to the said brokers by her and sold, and with the proceeds therefrom other securities were purchased. In several instances the brokers made out checks to the decedent for the balance of cash from the sale of certain securities not used in the purchase of other securities. These checks were deposited in her bank account. The decedent had always deposited to the same bank account interest and dividends received from her investments, from which she withdrew from time to time for personal expenses.

8. In the distribution of the estate of her father, R. C. Lake, Amy Lake Pietsch received $48,000 in cash and caused the same to be invested in securities. The dates of the receipt of cash, and the dates and names of the securities purchased, are as follows:

| Date cash received. | Amount. | Date. | Securities purchased. | Price. |
|---|---|---|---|---|
| Apr. 4, 1922 | $16,000 | Apr. 27 | 50 So. Pac | $4,500.00 |
| | | May 10 | 25 Fam. Players | 2,000.00 |
| | | May 15 | 10 E. Kodak | 770.00 |
| | | June 5 | 50 Fam. Players | 4,768.75 |
| | | Sept. 8 | 3 West Va. Water Co. (bonds) | 3,000.00 |
| Sept. 18, 1922 | 6,000 | Sept. 28 | 18 Am. Tob | 2,889.00 |
| | | Sept. 28 | 28 A. T. & San. Fe | 2,940.00 |
| Nov. 27, 1922 | 2,000 | Dec. 4 | 48 Conway Co | 4,080.00 |
| Mar. 16, 1923 | 8,000 | May 5 | 50 Union Pac | 6,747.50 |
| May 31, 1923 | 8,000 | | | |
| June 4, 1923 | 8,000 | June 15 | 50 N. Y. Cen | 5,137.50 |
| | | July 12 | 50 N. Y. Cen | 4,856.75 |
| | | July 12 | 50 A. T. & San. Fe | 4,943.75 |
| | | July 12 | 20 Pullman Co | 2,295.00 |

Of the $48,000 received in cash from her father's estate, $47,447 went into the above-named securities, and said securities constituted a part of the estate of Amy Lake Pietsch at the time of her death.

#### OPINION.

TRUSSELL: In accordance with the reasoning of the Board in the *Appeal of Elmer E. Rodenbough, Executor*, 1 B. T. A. 477, we are of the opinion that the record sufficiently establishes the identity of the stock of Eastman Kodak purchased for the sum of $18,180, as an exchange of the stock of the Continental & Commercial National Bank received from a prior taxed estate within the meaning of section 403 (a) (2) of the Revenue Act of 1921, and should be deducted from the gross estate of Amy Lake Pietsch in ascertaining the value of her estate for the purposes of the estate tax.

The stock sales and purchases made through Noyes & Jackson, brokers, present an entirely different situation. The record does not establish whether the 250 shares of Goodrich preferred received by Amy Lake Pietsch from her father's estate were sold prior to the time of the purchase of the Allis Chalmers preferred. And, although the record does establish that the 800 shares of Goodrich common received from the estate of R. C. Lake were sold, it does not establish whether the sum received from such sale went into the Allis Chalmers stock or into the Corn Products stock. We are, therefore, of the opinion that the identity of the Allis Chalmers stock as acquired in exchange for securities received from a prior taxed estate is not established and can not now be allowed as a deduction from the gross estate of Amy Lake Pietsch.

With respect to the $48,000 of cash received by Amy Lake Pietsch from her father's estate, the respondent, in his answer and at the trial, undertook to show by cross examination of petitioner's witnesses that the securities claimed to have been purchased with this cash were not sufficiently identified with the cash to permit their deduction from the gross estate of Amy Lake Pietsch. Cross examination, however, was successful only in developing the facts which are shown in paragraph 8 of the findings of fact hereinabove. We are, therefore, of the opinion that the record clearly establishes the identity of the cash acquired from a prior-taxed estate and the securities purchased and remaining in the estate of Amy Lake Pietsch, and we are, therefore, of the opinion that the deduction of $47,447 should be allowed as set forth in the original deficiency letter.

> *The deficiency may be redetermined in accordance with the foregoing findings and opinion on 15 days' notice, pursuant to Rule 50, and judgment will be entered in due course.*